# United Brethren Mutual Aid Society of Pennsylvania, Plff. in Err., *v.* Ellie Schwartz.

The forfeiture of a mutual aid contract of life insurance, by reason of nonpayment of assessments, may be waived by the company by subsequent acceptance of payment of past due assessments; but where the company refuses, within a reasonable time, to accept such payment and returns the amount thereof to its local agent, who had received it conditionally, subject to rejection by the company, such forfeiture will not be deemed to have been waived.

(Argued March 2, 1888. Decided April 30, 1888.)

July Term, 1887, No. 51, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Berks County to review a judgment in favor of the plaintiff in an action of debt upon a policy of life insurance, June Term, 1884, No. 53. Affirmed.

The charge of the court below, HAGENMAN, P. J., was as follows:

This action is brought on a policy of life insurance, dated

NOTE.—A by-law may be enacted by a mutual company providing for a forfeiture of the policy upon failure to pay assessments. Fogle v. Lycoming Mut. Ins. Co. 3 Grant Cas. 77; Passenger Conductors' L. Ins. Co. v. Birnbaum, 116 Pa. 565, 11 Atl. 378; *Re* Mutual Ben. Co. 174 Pa. 1, 52 Am. St. Rep. 814, 34 Atl. 283. But this power of the company may be waived. Simms v. Baltimore Mut. Aid Soc. 15 Pa. Co. Ct. 642; Com. *ex rel.* Williams v. Provident Life Asso. 163 Pa. 374, 30 Atl. 163.

April 14, 1877, issued by the U. B. Mutual Aid Society of Pennsylvania in class No. 3, Division B, and in favor of Ellie Schwartz, wife of Richard Schwartz. The evidence discloses that after this insurance was effected, there were made both the annual payments and assessments up until about August, 1883; and that from August, 1883, up to the time when Schwartz died, on February 9, 1884, there were several assessments which were due. These assessments were not paid. The money for them was brought to the office of the agent here in Reading on February 9, 1884, and Schwartz died on the same day.

Under the charter of this company, when one of the members dies there is an assessment made on those who are in the class, who survive, and they are required to pay their assessment within thirty days; and if an assessment is not paid within that time, the person loses his membership. There were several assessments that were not paid, beginning with August, 1883, and running up till December, 1883; and the payment of these was not offered to the company, nor to its agent, until the day when Schwartz died. Now, has the widow a right to recover on this policy notwithstanding these payments were not made?

It is claimed upon the part of the plaintiff, and we are asked to say to you, that Richard Schwartz was the only person under this contract who was entitled to notice; that that was the contract made between the parties when the application for this insurance was effected.

The testimony of Jonas Shalter is that he effected this insurance for the benefit of his daughter, and the notices were all sent to him. So far as the testimony in this case goes, no notices were sent to Richard Schwartz, but they were all sent to Jonas Shalter at Tuckerton, Berks county. I will read you the first part of his testimony when he was examined in chief:

Q. Look at these notices. These are the notices you brought to Mr. Deysher (the agent of the defendant) on February 9?

A. I could not say for certain, but I know I brought some there.

Q. You cannot say whether these are the notices?

A. No, sir; I do not pretend to do so.

Q. But you brought some there. You cannot recollect the names?

A. No, sir

*Q.* Please tell us where you received them?

*A.* I received them out of the postoffice.

*Q.* To whom were they addressed?

*A.* They were addressed to me at the Tuckerton postoffice.

*Q.* Who made this insurance?

*A.* I got Mr. Kuser to make this insurance.

*Q.* And the notices were to be sent to you?

*A.* Yes, sir; and the notices were to be sent to me.

*Q.* Please tell us when you received the first of these?

*A.* That I cannot tell.

*Q.* How long after the date of the first one?

*A.* I could not say.

*Q.* Was it a short time after or a long time after?

*A.* I cannot say when I received them. I used to receive them and keep them in my pocket until I had a bunch in my pocket, and then I would come in and pay.

*Q.* These were received, then, at different times?

*A.* Yes, sir.

*Q.* Please tell us at what intervals. This one is dated August 31, 1883?

*A.* I would not know for certain.

*Q.* About how long after—a few days after?

*A.* I know that I had them, and when I went to pay and had not received a notice like that, the agent then would make one; I think Mr. Deysher made one.

*Q.* I am asking about this?

*A.* I do not know that.

*Q.* About how long after the date were you in the habit of receiving them?

*A.* I do not know as to that.

*Q.* Shortly after—a day or two?

*A.* I received them longer than that after.

*Q.* A week after the date of them?

*A.* I do not know.

*Q.* You cannot tell us that?

*A.* No, sir.

*Q.* That one is dated in August, this one in September, this one in October. Did they generally come there a few weeks apart?

*A.* Yes, sir; they came enough of them.

That is the whole of the testimony of Jonas Shalter, for the

benefit of whose daughter, the plaintiff in this case, this insurance was effected.

We are asked to say that Schwartz was the only person under this contract who was entitled to notice. The evidence of Shalter is that he paid all the assessments heretofore issued, all the dues to this company, and he was the recognized agent of Schwartz to make these payments; at least he made them all and it is for the jury to say whether he was not the authorized agent who should receive notices. And the fact that Schwartz's name is in the application does not prevent the jury from finding from these facts that Shalter was the authorized agent to receive these notices.

[If these notices were received by Shalter, as he testifies, and no payments were made on these several assessments until February 9, how was that payment made? If that payment was made and accepted by the company, the company would be bound.

On February 9 Shalter came to the office of Deysher, who was the agent of the company in Reading, and put the money there equal to the amounts of these several assessments. Was that money received by the agent for the company? Did the company accept it? If the company did accept it, the company is bound to pay this policy.] 1

[Deysher says that when this money was brought to him, he declined to receive it, stating that he had been delinquent so long; and after some talk between himself and Shalter he finally agreed to take the money and forward it to the company, and if it was not received by the company it was to be returned. He says he put the money into an envelope and made that indorsement on it: "If money is not received, must be refunded;" that on the same day he forwarded a report to the company at Lebanon, and in that report of his he said: "If money is not received, must be refunded." That, he says, was done by himself, and this is the report he sent to the company. It seems that this was on Saturday evening that his report was sent to Lebanon, and on the 12th he received a letter from Lebanon in which it is stated:

"Your report of the 9th inst. with check for $61.27 was correct, excepting the remittance on Richard Schwartz's which cannot be accepted, because he is not in good standing on our books; we therefore return the $9 sent for him."

That is the action of the company on the remittance of this money that was handed by Shalter to Deysher.

Now, if the jury find this to be so, then there was no acceptance of this money by the company, and hence there was no waiver of the default of the payment of these several assessments.] 2

[It is contended by the counsel for the plaintiff, and the court is asked to say to the jury, that there having been no return or response by the company for a period of ten days, the company waived the forfeiture by its hesitation.    You have the testimony of Joseph Deysher, who states that on the Friday following the burial of Schwartz, Shalter came there into the office, and that they offered to return him the money; that the company declined to accept it, and that he refused to take it; and that it was then said to him, "Well, that was the understanding;" or words to that effect—the jury will recollect what was said—and he said, "Yes, but I will see further; I will not take it."

That is the testimony also of Mrs. Deysher; and if that testimony is believed, ten days had not elapsed, and even if the ten days had gone by and the company had sent this notice to its agent on the 12th day of February, in which it declined to receive this money, there was no waiver of the forfeiture.]    3

This is pretty much all that we are required to say to you—what we have said to you in regard to the notice to Shalter, and also in regard to this other point about the ten days not being a waiver of the forfeiture.    The company as early as the 12th of February sent notice back to its agent here that he should return that money, and that it was not accepted.    This is all that is necessary for the court to say to you.    You will have these papers out with you, and you will pass on them.

The jury returned a verdict in favor of the plaintiff, and judgment having been entered thereon, defendant took this writ, assigning as error (1–3) the portions of charge inclosed in brackets.

*Ermentrout & Ruhl,* for plaintiff in error.—The court erred in submitting to the jury the question whether there had been an acceptance by the company of the unpaid and overdue assessments levied upon the policy in suit, to pay death losses, whereby the forfeiture of the same was waived, and the policy in suit,

then lapsed and dead, was revived, for the reason that there was no evidence in the cause which warranted the court to submit that question.

It is error to submit a question to the jury of which there is no evidence.   Elkins v. McKean, 79 Pa. 493.

Even where there is a scintilla of evidence it is error to submit it to the jury.   The doctrine of a scintilla of evidence requiring the submission of it to the jury is exploded in Pennsylvania. Cunningham v. Smith, 70 Pa. 450; Howard Exp. Co. v. Wile, 64 Pa. 205; Philadelphia & R. R. Co. v. Yerger, 73 Pa. 124.

*Garrett B. Stevens* and *Cyrus G. Derr* for defendant in error.

PER CURIAM:

While the weight of the evidence in this case seems to have been with the defendant, yet we cannot say that the court erred in submitting the facts to the jury.   Nor can we discover anything in the assignments which tends to convict the court of improper ruling.

Judgment affirmed.